## Case No. 789.

### Ex parte BALCH.

[2 Lowell, 440;[1] 13 N. B. R. 160.]

District Court, D. Massachusetts. Oct., 1875.

NEGOTIABLE INSTRUMENTS—PAYMENT—EXTENSION OF TIME—ESTOPPEL—DISCHARGE OF INDORSER.

1. Company A. was promisor, and Company B. was indorser, of certain promissory notes. Both companies became embarrassed, and Company A. agreed to sell all its property to C., who had been the treasurer of both companies, at any time within one year, when he should have paid all the debts of the company. Friends of C. subscribed money, and put it into the hands of D., as trustee, to enable him to buy up the notes of Company A. indorsed by Company B. *Held*, that the purchase of these notes by the trustee with the funds of the subscribers was not a payment of the notes.

2. A representation by the holder of a note to the indorser that the note has been paid, does not discharge the indorser, who has been duly notified, unless he has suffered some loss or injury by reason of the representation.

3. A contract by the holder of a note to give time to the maker must be a valid and enforceable contract, as against the holder, or it will not operate to discharge the indorser.

In bankruptcy. F. V. Balch, trustee, offered proof against the assets of the Eliot Felting Mills, a bankrupt corporation, for the amount of three promissory notes of $5,000 each, signed by the City Mills and indorsed by the bankrupt corporation. It was admitted that the City Mills were primarily liable, and that one of the notes had not been duly protested, and the proof upon that note was abandoned.

The questions upon the other two notes arose upon the following state of facts: S. M. Weld had been treasurer of both corporations, and both stopped payment, and Weld and the Eliot Mills went into bankruptcy. Afterwards the City Mills voted to sell all their property for the purpose of paying their debts, which were equal to about the supposed value of the property. Still later, viz., March 17, 1875, a vote of the stockholders was passed, recalling the order for sale, and resolving to execute proper conveyances of all the property, which should be placed in the hands of Mr. Balch, as an escrow, to be delivered to Mr. Weld on his receiving his discharge in bankruptcy within one year from that date, provided he should elect, within one week after such discharge, to take the property, and should cause to be paid, or give a satisfactory guarantee against all the debts of the corporation, excepting one that was secured by mortgage. Weld was to run the mill in the mean time for cash, without subjecting the corporation to any liability, and, if he ultimately bought the property, was to have any profits earned in the interim. About ten days after this vote was passed a paper was drawn up, reciting that certain friends of Mr. Weld had

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

raised $25,000, to be lent him on his obtaining his discharge, and that it was desirable that the money should be applied at once to purchasing the debts of the City Mills, and agreeing that the money should be placed in the hands of Mr. Balch, to be applied to that purpose in such sums and at such times as Mr. Weld should direct, and that Weld should give his notes in exchange for the debts so purchased, and that Balch should hold the debts so purchased until Weld should obtain his discharge and give his notes for the several amounts. This agreement was signed by the several subscribers to the loan, including most of the stockholders and directors of the City Mills, with some others. Weld further agreed by the same paper to devote his time to the superintendence of the business of the City Mills, with a view to purchasing the same under the vote above mentioned. Mr. Balch immediately bought these two notes, one of which was overdue and had been duly protested, and the other, coming due on the day of his purchase, he caused to be protested. On or about the 16th of April, 1875, the property of the City Mills was seriously damaged by a flood, and the project for a purchase by Mr. Weld was abandoned, and this corporation went into bankruptcy at or near the time the notes were bought by Mr. Balch. Mr. Weld informed one of the assignees of the Felting Company that they had been paid.

E. Merwin & W. P. Walley, for the assignees of the Eliot Felting Mills, contended:

1. That as against the indorsers this debt was paid by its purchase.

2. The holder is estopped by the representation made by Mr. Weld, the real party interested, that the notes had been paid.

3. Time was given to the City Mills, who were the principal debtors, and thereby the indorsers were discharged.

R. M. Morse, Jr., for the creditor.

LOWELL, District Judge. Two of the three points are clearly against the objectors.

1. These notes have not been paid. The evidence clearly shows that they were bought and were to be held good, at least against the City Mills. Now, I admit that if a surety pays a note, it may often be a payment in his favor, and yet no payment as against him. In other words, the holder may still sue the maker upon the note, as trustee for the surety; or the surety may often sue the maker himself. But if the note has been paid by the principal it is gone. In this case there has been no payment by either principal or surety. The money did not come from either, and the purchase did not affect the surety in any way unless his situation was afterwards changed by the act of the purchaser; that is to say, unless the second or third point is good.

2. There is no estoppel, because that depends on an actual loss of something in the particular case; and there is no evidence of such loss.

3. The third point does not depend upon damage in the individual case. If time has been given to the principal the surety is discharged, whether there has been damage or not.

To constitute the giving of time there must be a valid contract which a court would enforce in favor of the principal against the creditor. I think there is no such agreement in this case. By the vote, the City Mills agreed to wait for one week after Mr. Weld should obtain his discharge, or for one year, whichever event should first come about, before disposing of their property excepting to him. He undertook nothing.

To the agreement between Mr. Weld and the subscribers to the loan the City Mills were not a party, and there was no occasion for their becoming a party to it, for it does not bind the parties to it to do or forbear any thing in respect to the City Mills. It is res inter alios. The clause on which the assignees more particularly rely is that which says that the debts of the City Mills shall be held by Mr. Balch, for the benefit of the subscribers, until Mr. Weld obtains his discharge and gives his notes. This has nothing to do with suing or not suing the City Mills. It means that Balch is to hold for the subscribers until he holds for Weld, and is intended merely for the security of the former. But granting that it intends that Balch should hold the very notes that he receives, still, if he should sue them, the City Mills would have no equity to prevent him. A breach of his trust, in this respect, would be nothing to them.

Besides, I have no doubt that the true construction of the vote of March 17 is that Weld might at any moment after the vote was passed, whether before or after he obtained his discharge in bankruptcy, make up his mind and notify the corporation that he should not, under any circumstances, take the property. If this be so, there is nothing in the second paper to vary it. So that even if we grant that there was an implied agreement that Weld, buying the debts, should not sue them until he had determined not to buy the property, that merely amounts to an undertaking that he would not sue until he chose to sue, which, I apprehend, would be no answer or ground of action against him, because the very fact of his suing would conclusively prove and determine his election. Debt admitted to proof.